UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VASHAUN CIHARRO WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:22-cv-02476-GCS |
| ) | |
| WEXFORD HEALTH SERVICES, ) | |
| CRAIG ASSELMEIER, LILLIAN ) | |
| OVERALL & SHERRY JONES ) | |
| ) | |
| Defendants. | |

MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Pending before the Court is Defendant Wexford Health Services, Inc.'s ("Wexford") Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. (Doc. 39). Defendant Wexford filed their Motion for Summary Judgment along with a Memorandum of Support on November 6, 2023. (Doc. 39, 40). Plaintiff filed a timely response to Defendant's Motion on December 8, 2023. (Doc. 52). For the reasons delineated below, the court **GRANTS** Defendant Wexford's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. (Doc. 39).

PROCEDURAL HISTORY

Plaintiff Vashaun Ciharro Williams ("Williams") is an inmate in the Illinois Department of Corrections ("IDOC"), currently incarcerated at Menard Correctional Center ("Menard"). On October 25, 2022, Plaintiff brought this suit against Wexford and

three unidentified Wexford "dentists." (Doc. 10).¹ Through limited discovery, the three dental professionals were identified as Dr. Craig Asselmeier, Dr. Lillian Overall, and Dental Assistant Sherry Jones.² (Doc. 46).

Plaintiff alleges that he received inadequate dental care after having his tooth pulled in the middle of 2019. (Doc. 10, p. 10). For two years following the extraction, Plaintiff claims he experienced pain at the extraction site from the remaining roots, and the subsequent removal attempts by the Wexford dentists were unsuccessful. (Doc. 10, p. 13). Plaintiff reportedly complained to several different dentists about his pain, and they were unwilling to address it. *Id.* at p. 11. When Plaintiff saw Defendant Overall, she allegedly informed him that the other dentists had "messed [Plaintiff's] mouth up" and when Plaintiff asked how, she told him not to worry about it as she rubbed her fingers together gesturing that money was the reason. *Id.* at p. 12. Dr. Mistie Norton-Hill, an oral surgeon who successfully removed Plaintiff's remaining roots in September 2021, allegedly informed Plaintiff that the Wexford dentists should never have attempted to

---

¹ Plaintiff's original complaint was unsigned. (Doc. 1). On July 5, 2023, the Court ordered Plaintiff to submit a properly signed complaint, including any exhibits on or before August 7, 2023. (Doc. 9). Plaintiff then submitted a properly signed complaint on July 24, 2023. (Doc. 10).

² The Court directed Plaintiff to conduct discovery aimed at identifying the unknown dental defendants. (Doc. 11, p. 5). In the Court's initial scheduling order, Plaintiff was directed to file a Notice with the Court by October 5, 2023, to provide Defendant Wexford and the Warden's attorney with any information that he possessed that would help identify the John/Jane Does. (Doc. 25). Defendant and the Warden had until October 20, 2023, to file a Notice with the Court and provide Plaintiff with the identity of the John/Jane Does. *Id.*

On November 2, 2023, just before Defendant Wexford filed their Motion for Summary Judgment, Plaintiff filed a Motion for Heading Change. (Doc. 38). In the Motion for Heading Change, Plaintiff identified Dentists Craig Asselmeier, Lillian Overall, and Mistie Norton-Hill as the unidentified dentists. *Id.* at p. 2. Plaintiff also identified Dental Assistant Sherry Jones as having been involved in his dental care. *Id.*

remove the remaining roots; instead, they should have sent him to an oral surgeon long ago. *Id.* at p. 14. She also reportedly told Plaintiff that the dental department at the prison is on a salary and sending an inmate off-site to an oral surgeon incurs extra costs. Id. at p. 14.

On July 31, 2023, the Court completed its preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A and construed Plaintiff's allegations into the following counts:

> **Count 1**: Eight Amendment deliberate indifference to serious medical needs claim against Defendants Asselmeier, Jones, and Overall, for delaying and denying treatment for Plaintiff's ongoing dental pain caused by a tooth extraction that left root fragments in his jaw.
>
> **Count 2**: Eight Amendment deliberate indifference to serious medical needs claim against Wexford for maintaining a cost-cutting policy that prevented and delayed Plaintiff's referral to an off-site oral surgeon for removal of the root fragments for more than two years.

(Doc. 45, p. 4-5). Both Counts 1 and 2 of Plaintiff's Complaint survived preliminary review. *Id*. Defendant Wexford then proceeded to file the presently pending Motion for Summary Judgment regarding the Issue of Exhaustion of Administrative Remedies. (Doc. 39). Plaintiff's First Amended Complaint identifying the dental professionals was then screened, and Plaintiff's claims against Asselmeier, Overall, and Jones were allowed to proceed. The Court noted that Plaintiff's First Amended Complaint did not render Defendant Wexford's presently pending Motion for Summary Judgment moot. (Doc. 45).

## FACTUAL BACKGROUND

Plaintiff's Menard grievance record from January 2019 to the present, is 130 pages and is contained in its entirety in Exhibit B. *See* (Doc. 40, Exh. 2). Plaintiff has written only

two grievances regarding the Dental Department at Menard. Plaintiff wrote Grievance No. 235-6-19 on June 11, 2019, stating that he had not been in for a teeth cleaning in years. *Id.* at p. 118. Grievance No. 235-6-19 is unrelated to the substantive facts Plaintiff alleged in his complaint and has no bearing on the motion before this Court.

    The only relevant grievance identified by both Plaintiff and Defendant that pertains to the substantive allegations is Grievance No. 232-5-21. (Doc. 52, p. 3); (Doc. 40, p. 5-6). Plaintiff filed this grievance on May 27, 2021. (Doc. 40, Exh. 2, p. 102-103). In the grievance, Plaintiff explains that he had a tooth pulled between the Summer of 2019 and the beginning of 2020. *Id.* at p.102. After the tooth was pulled, Plaintiff was still in pain and reportedly complained to doctors and nurses. *Id.* He also claims that he wrote to sick call. *Id.* at p. 102-103. Plaintiff indicates that when he finally saw a dentist, x-rays were taken, and he was told that he had an infection. *Id.* at p. 103. Plaintiff was then prescribed antibiotics to address the infection. *Id.* However, Plaintiff was still in pain after the regimen of antibiotics. *Id.* Plaintiff was then called back to see the dentist again, and after two hours of "scraping," Plaintiff could not stand the pain any longer and the dentist stopped working. *Id.* The dentist reportedly told Plaintiff that he would be fine. *Id.* During a subsequent dental exam, the dentist told Plaintiff that the dentist who had performed his tooth extraction had left a tooth root in his mouth and that this was the cause of his pain. *Id.* The dentist attempted once again to pull the remaining roots, but this caused Plaintiff to experience another dental infection. *Id.* Plaintiff was then given a higher dose of antibiotics to cure the infection. *Id.* After this dose of antibiotics, Plaintiff reported that his mouth was still "not all the way healed." *Id.* After the second removal attempt,

Plaintiff refused to allow dentists to remove the roots again because he feared for his health and safety. *Id.* Plaintiff claims the dentists then informed him that he would have to see an oral surgeon. *Id.* As relief, Plaintiff requested that he be seen by an oral surgeon and that his administrative remedies be exhausted. *Id.*

Grievance No. 232-5-21 was reviewed by a counselor at Menard on June 4, 2021. (Doc. 40, Exh. 2, p. 102). The Counselor requested a medical review of Plaintiff's grievance by Defendant Dr, Asselmeier. *Id.* at p. 104. Asselmeier reviewed Grievance No. 232-5-21 and indicated that Plaintiff was healing within normal limits and that an appointment with an oral surgeon had been made for him. *Id.* On June 10, 2021, the Grievance Officer recommended that the grievance be labeled as moot because Plaintiff was already scheduled to see an oral surgeon. *Id* at p. 100. The Chief Administrative Officer ("CAO") concurred with the grievance officer on June 15, 2021. *Id.* Plaintiff appealed the CAO's decision to the Administrative Review Board ("ARB") on July 14, 2021. (Doc. 40, Exh. 1, p. 69). The ARB received Plaintiff's grievance on July 22, 2021, and the ARB denied it on July 30, 2021, because it was received 30 days past the CAO's decision. *Id* at 68.

### LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, the Court's role is to determine whether a genuine issue of material fact exists rather than evaluate the weight of the evidence, judge witness

credibility, or determine the truth of the matter when ruling on a summary judgment motion. *See National Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, the Court must determine whether an inmate has exhausted his or her remedies when the affirmative defense of non-exhaustion is raised. If the court finds that the inmate failed to exhaust administrative remedies, then the inmate is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent. *Id.* at 742. If the court determines that the failure to exhaust was the inmate's fault, then the case is over. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This coincides with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). It affords prison administrators an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-

24 (7th Cir. 2002).

Inmates must follow their prison's administrative rules when attempting to exhaust administrative remedies under the PLRA. *See Pozo*, 286 F.3d at 1023. Plaintiff is an inmate in the IDOC and is required to follow the regulations contained in the IDOC's Grievance Procedures to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the requirements for exhaustion under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The exhaustion requirement cannot be satisfied if an inmate files untimely or procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Additionally, an inmate must correctly complete all the steps outlined in the grievance procedures and is barred from filing suit prior to any step being completed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); 42 U.S.C. § 1997e(a). If an inmate fails to complete all the steps to exhaust his claim, then "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. However, inmates are not required to exhaust administrative remedies that are unavailable to them which can occur if, "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Id.*

The IDOC Grievance Procedures require that an inmate first file a grievance with a counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The Grievance must include, "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in

the complaint." *See* 20 ILL. ADMIN. CODE § 504.810(c). If the inmate is unsatisfied with the counselor's response, then the inmate can submit a formal grievance to the prison's grievance officer. *Id.* at (a)-(b). The grievance officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of the receipt of the grievance, the grievance officer must report his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO will then review the findings and recommendations and offer a written decision to the inmate. *Id*. The inmate can appeal the CAO's decision to the ARB within thirty days. *See* 20 ILL. ADMIN. CODE § 504.850(a). To do this correctly, the inmate is required to attach copies of the grievance officer's report and the CAO's decision to his appeal. *Id*. The ARB then submits its findings and recommendations to the Director who will issue the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)-(e).

## DISCUSSION

Defendant Wexford advances two arguments in support of its Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. (Doc. 39, 40). First, Defendant argues that Plaintiff failed to exhaust his administrative remedies for Grievance No. 232-5-21 because the ARB did not receive the grievance within thirty days of the date of decision made by the CAO at Menard. (Doc. 40, p. 11). Second, Defendant argues that Plaintiff failed to name or describe Wexford or provide any information about Wexford's alleged cost-cutting policies in Grievance No. 232-5-21, and therefore, he did not put Menard officials on notice of any alleged problems with the treatment he

received. (Doc. 40, p. 12).

In Plaintiff's Memorandum of Opposition to Defendant's Motion for Summary Judgment, Plaintiff asserts that prison officials withheld the CAO's response for 28 days which precluded him from appealing to the ARB within the thirty-day period. (Doc. 52, p. 14). Regardless of Plaintiff's contention that he was prevented from fully exhausting his administrative remedies, the Court finds that Grievance No. 232-5-21 did not sufficiently grieve conduct attributable to Wexford. Thus, the Court **GRANTS** Defendant Wexford's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. (Doc. 39).

Plaintiff correctly states that he is only required to exhaust the administrative remedies that are available to him. *See, e.g.*, *Dole*, 438 F.3d at 809 (stating that a remedy becomes unavailable if prison employees use affirmative misconduct to prevent an inmate from exhausting). Plaintiff has alleged that his appeal to the ARB was untimely, by no fault of his own, because prison employees had withheld the CAO's decision for 28 days before providing it to him, thus preventing him from properly exhausting. (Doc. 52, p. 14). As such, summary judgment cannot be granted on the grounds that Plaintiff failed to appeal the CAO's decision within 30 because there is a question of material fact as to whether the grievance process was available to him. Even assuming that Plaintiff's grievance had been timely appealed to the ARB, Grievance No. 232-5-21 still lacks sufficient details to put the institution on notice of Wexford's alleged conduct for the purposes of exhaustion.

While the Illinois Administrative Code provides instructions for setting forth

complaints against individuals, it makes no mention of how an inmate should proceed to grieve the conduct of corporate entities like Wexford. *See* ILCS § 504.810(c). In cases "[w]hen the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). "When a Wexford policy or practice is at issue, courts have held that grieving activities for which Wexford was responsible and/or involved in the decision-making process are generally sufficient to put the prison on notice that the plaintiff is grieving a Wexford policy or practice." *Diaz v. Baldwin*, Case No. 18-cv-1426-RJD, 2021 WL 1401463, at *3 (S.D. Ill. Apr. 14, 2021) (citing *Armbruster v. Wexford Health Sources, Inc.*, Case No. 16-cv-0544-MJR-SCW, 2017 WL 2418724, at *6 (S.D. Ill. June 5, 2017)). *See also Nance v. Illinois Department of Corrections*, Case No. 3:16-cv-875-NJR-DGW, 2017 WL 11679008, at *3 (S.D. Ill. Dec. 14, 2017) (stating that cost-cutting is a theory, and the Illinois Administrative Code does not require inmates to state a theory in their grievance).

Grievance No. 232-5-21 failed to alert prison officials and give them a fair opportunity to address the wrong Plaintiff alleges in his complaint against Wexford. In Grievance No. 232-5-21, Plaintiff recounts the problems he has had with his tooth and the several attempts that the Dentists took to remedy his pain unsuccessfully. (Doc. 40, Exh. A, p. 71-72). Plaintiff never alleges that he was denied care or that he disagreed with a decision made by Wexford or any of the Dentists employed by Wexford. Nor does Plaintiff grieve a formal or informal Wexford policy such as the cost-cutting theories he alleges in his complaint. *See, e.g., Nance,* 2017 WL 11679008, at *2 (noting that exhaustion requirement was satisfied without identifying Wexford when the inmate grieved he was

denied medical care for years). *See also Brown v. Ritz*, Case No. 3:22-CV-2372-MAB, 2024 WL 1155948, at *8 (S.D. Ill. Mar. 18, 2024) (noting that exhaustion requirement was satisfied without identifying Wexford when the inmate grieved the refusal of MRIs, physical therapy, and the alleged policy of not authorizing medical treatment without a medical director). *But see Diaz*, 2021 WL 1401463, at *3 (noting that exhaustion requirement *was not* satisfied without identifying Wexford when the inmate failed to grieve any policy or practice attributable to Wexford). In contrast, Plaintiff's Complaint and Amended Complaint allege that the dentists insinuated that a Wexford policy concerning treatment costs, served as a motivation for their treatment decisions. *See* (Doc. 10, p. 12-13); (Doc. 46, p. 14–16). In the Complaint and Amended Complaint, Plaintiff indicates that Defendant Dr. Overall rubbed her fingers together and stated that "the bosses and big boys don't like to pay extra bills." (Doc. 46, p. 15). *See also* (Doc. 10, p. 13) (noting that Overall stated that "[t]he higher ups don't like bills.").

Plaintiff's situation is like the plaintiff in *Diaz*. In *Diaz*, the inmate was seen by several nurses after he broke his hand. *See Diaz*, 2021 WL 1401463, at *1. Each nurse told him his hand was bruised and that he should get back to work. *Id*. Later, when he saw a doctor, he was informed the hand was broken. *Id*. The doctor was surprised it had taken so long for the inmate to be seen when the nurses should have diagnosed the broken hand without the need for an X-ray because the bone was sticking up. *Id*. Additionally, when the inmate saw a specialist, he was told there was nothing they could do for his hand because it had already started to heal, and he would later need surgery. *Id*. The inmate in *Diaz* was clearly aggrieved by the nurses' behavior and the treatment he received but did

not provide information about any policy or practice on the part of Wexford. *Id.* at *3. Instead, his grievance focused on the behavior of the nurses. As in *Diaz*, Plaintiff has not grieved any specific policy, practice, or decision that could implicate Wexford. It is true that Plaintiff's Complaint and Amended Complaint articulate an alleged policy or practice based on the comments some of the dentists and assistants made to him. But none of those allegations are present in the grievance in question. Even after reading Plaintiff's grievance liberally, he is clearly complaining about the care he received from the various dentists and assistants who treated him. There is no reasonable basis to infer from the grievance that Plaintiff is in any way complaining about Wexford's policies and procedures. Thus, Plaintiff's grievance would not have placed the prison on notice that he was grieving about the existence of such a policy, practice, or decision. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. 39).

## Conclusion

For the forgoing reasons, the Court **GRANTS** Defendant Wexford's Motion for Summary Judgment as to Exhaustion of Administrative Remedies. (Doc. 39). Thus, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claim against Wexford.

IT IS SO ORDERED.

DATED: September 3, 2024.

Digitally signed by Gilbert C Sison
Date: 2024.09.03 14:08:48 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**